Good morning, and may it please the court. There were, I faced four defense law firms, in this case not two, and before, immediately before trial, all four defense firms agreed that the plaintiffs were entitled to a jury trial that there were fact questions in issue. And on the eve of trial, when Judge Wilson ruled sua sponte to dismiss, based in part on his own summary judgment findings, the court unfortunately put me here today without a record, and I respectfully submit to the court that's not fair. Counsel didn't both sides ask for summary judgment? Yes, sir, but on different subjects. And so, the limited record that we've- Let's go beyond fairness in the district court. That's not why we're here. Okay. Legal issues on appeal. Let me start. Before, the day before the creation of the revocable trust, what was mother's authority to decide which of the children would succeed to control of the corporation? She had all the voting shares of the corporation, but she gave some stock equally. Wait a minute. I may have misunderstood the question. You said the day before the creation of the revocable trust in 2001. The revocable trust. There was no class C. There was, before all of the first started flying. Yes. What was mother's authority as owner of the sole voting shares to decide which of the six children would succeed to corporate control? She had authority to follow the restriction on transfer. When was that created? It was created in 1970, in the 70s. Okay. Yes, sir. And on that subject- How would that affect her ability to devise corporate control in her will? The will, as I understand- Restriction to stocks transfer restrictions applied to mother's will? No, your honor. No. But the will never was triggered by virtue of the way the facts unfolded in this case. Yes, but I'm trying to get the corporate law grounded here. Okay. All right, so if mother had authority to decide by will before all of these events, which of the children, by reason of inheriting the most controlling voting stock, would control the corporation? We're talking about control of the corporation, right? That's why we're here. Am I right? In part. The reason that the will is different is because the restriction on transfer did not affect  Counsel, I'll get to the ... I just want to get the grounding. If you will concede that mother could do that by will before the creation of ... before subsequent events. Only because the restriction on transfer did not apply to wills. It only applied to inter vivos transfers, which is what ... So she could not ... it would restrict her from by inter vivos transfer ... her inter vivos transfer. Affirmative. Among her children. Yes, sir. That's right. And that's what happened. So if five of the children had moved to Australia, mom was incapacitated to give the willing sixth child control of the corporation. She could not, under the restriction on transfer, make an inter vivos transfer, and that's what she did. She didn't follow the rules of the restriction on transfer. And on that score, while we're talking about the restriction on transfer, I want to say quickly that Judge Wilson said the plaintiff's interpretation of that ... the relevant provisions were nonsensical because it required offers to the corporation twice. No defendant argued that, and for good reason. The two offers are different. Well, I just gave you a good reason. That's a ridiculous application of a stock transfer restriction in my corporate law experience, to have it restrain the controlling shareholder's ability to make transfers within the family. It was a matter of contractor honor, and that's what ... that's the way mom wanted it when she ... You said 19-7.  Yes. She created the restriction. She created the restriction. And what's really interesting, Your Honor, is that the restriction on ... the bylaws were changed in many ways right at the time of the actual transfer, but this restriction provision wasn't changed. They had the right to change it, but they didn't change it. But anyway, the reason the corporation had two bites at the apple is because under sub went to the corporation at a price to be determined to set forth herein. That was book value. The second option, if things progressed down the stairs or the steps, the second option to the corporation was to be able to match the price of the purchaser. If the corporation didn't like who was buying, they could still step in and match that price, and so it made sense for the corporation to have two bites at the apple. Now what you've just said, now we're back to my hypothetical. There's no trust. Mom is it. Mom is CEO, CFO, chairman of the board. So she's in control. Even if the stock transfer restriction applies, she's in control. She just has to follow the bylaws. Moving on, because I only tried to delegate seven minutes to this phase, if I may. The third ... The phase that matters. I'm sorry? It's the phase that matters. Okay. If I had ... I want to answer the court's question. Why doesn't each of the ... If the transfer was invalid, then it's undone, and the two shares go back into the trust. Presumably each of the children own one-sixth of two shares. That's right, your honor. And the trust, I think this is- And Jones is the trustee, the successor trustee. Yes, sir. And I think this is in the record. The trust would give those two shares equally to the six children. Right. Okay. And so now we've got ... Well, they're held in the trust. The trust doesn't have to distribute them. Under the terms of- Jones is trustee, will now control the corporation, which has the two voting shares. Under the terms of both the will and the trust, though, each of the six children would get an equal share of the voting stock. So if Jones didn't turn that over, he would not- Wait. By compelled liquidation of the trust? No, your honor. By the provisions of the trust. Yes, but the provisions of the trust don't require that it be liquidated. So if the courts rescind the two-share transfer, shares go back into the trust, and they sit there until the trustee ... Until it's liquidated, right? Well, I would submit to the court that the way it would work is there would be a probating of the will, and the terms of the will, combined with the trust, would call for a transfer now of equivalent voting interest to all six children. Okay. So the plaintiffs wind up with one-third of two shares. Plaintiffs ... Each plaintiff ends up with a one-sixth share of the voting control of the corporation. That's the way mom always wanted it, equal- Okay. And the defendants control the corporation? No, your honor. It'd be really three and three, because Ballard, as the record reflects, really supports the claims of the plaintiffs. So it'd be three and three. Okay. The last point I'd like to make is this. In the face of the alleged self-dealing of Jones, is there no remedy in a closely held farm corporation like this involving six siblings? Is there no remedy for us to right the wrong of the self-dealing? We're not here to answer those kinds of questions. You need to give us a reason to do what you want us to do. And here's ... I respectfully submit that the reason that we're entitled to relief is that we're entitled to our day in court on breach of summary ... On breach of fiduciary duty and on unjust enrichment. The court ruled early on in the case that we were not entitled to injunctive relief or to a receivership, because the case was susceptible to money damages. And then on the eve of court, Sue Esponte took away our damage claims, even though the defendants acknowledged that we were entitled to a jury trial thereon. Thank you. And what's the record site for this acknowledgment? I beg your pardon? What's the record site? What do I read to see this acknowledgment? In the record on appeal, where is this acknowledgment? Where did the defendants acknowledge that we were entitled to a right of jury trial? No, I haven't read the record yet. Okay. Well, there was no motion for summary judgment. There was no motion to dismiss ... Wait, wait, wait, wait. The absence of a motion is not an affirmative acknowledgment. You've stated twice now that defendants conceded you deserve a jury trial, and I'm saying where in the record on appeal is that ... Do I find that? I respectfully submit that if the case was set for trial and we were preparing to go to trial and there was no motion to prevent the trial, by their inaction, Your Honor, they stipulate that we were entitled to the trial. They didn't ... Wait, wait, wait. Arkansas law site for that? I mean, that's ... Your word acknowledgment is a severe overstatement of the record now, it appears. I don't see anywhere in the entire record where the defendants suggested to this court or to the lower court that a jury trial was inappropriate. Thank you. Thank you, Mr. Ludwig. Mr. Allen? May it please the court? I'd like to begin by talking about the transfer and that it's valid and the court should be upheld. And I'd like to refer to the case of Rimelong versus Snyder, a North Dakota Supreme Court case involving a meat company, a closed corporation. Is this in your brief? Oh, yes. The case is in the brief, yes. And the requirement of the bylaw in that case was before the shareholder could sell his stock to another shareholder, he had to first offer that stock to the corporation at fair vote value. And the court held that that was to protect the corporation from outside interference. But it also stated that such bylaws did not prohibit a sale from one shareholder to another and did not require approval of the corporation and the other shareholders. And the result was a valid transfer. Now, the policy statement in the court's opinion is instructive to the case before us today. The shareholder Semerad sold his stock to shareholder Snyder. The corporation president filed a lawsuit against the buyer seeking that a trust should be imposed for the benefit of the corporation. And the court held that such stock restrictions are regarded with disfavor and are strictly construed to uphold the widest range of choices permissible to the seller under the language used. And the court adopted a method of construction from the Oklahoma Supreme Court, the Guaranteed Laundry case that we cited, as follows. It says, when the restriction agreement is, one, subject to the construction that the stock may be sold by one shareholder to another shareholder, and two, also subject to the construction that if it be sold to all other shareholders, subject to the construction that it must be sold to all shareholders in proportion to the shares they own, the former construction is justified as it offers the wider choice to the seller and the buyer. In other words, there is a preference in favor of approving a transfer from one shareholder to another. And why is that? It's because the policy of the law is that there should be free alienability of personal property. Now, Mr. Jones is in the same position as Mr. Schneider. The final step in the Okista stock restriction is for an offer to be made to the remaining shareholders. Yet, in this case, a remaining shareholder in the person of Mr. Jones has already received a transfer from his shareholder mother, and applying the construction just described, that is, that the transfer from one shareholder to another is preferred as it offers the wider choice to the seller and the buyer, or in the case of here, the transferor and the transferee. So the transfer is valid. Counsel, was there anything in the record regarding any kind of suspicion or evidence of undue influence or some indicator that this wasn't a willing transfer? No, Your Honor, I cannot cite anything that there was any undue influence on the mother is what you're asking, correct? So, in fact, the evidence, you don't want me to talk about evidence, so let me just say in conclusion and move on, that the evidence is that she wanted that corporation to go forward, not to be sold, and their best bet on that was Mr. Jones. Now, there's also a Supreme Court of Kansas case in our brief, Talbert v. Nisbet, that says the overwhelming authority is that the restrictions like these should be applied only when the sole purpose is... Well, purpose doesn't trump language, contract language under Arkansas law or I think any state in the Eighth Circuit. Well, the cases... All you're talking about is cases from other states that have talked about the purpose. I wish there were cases in Arkansas, but we had to go to the cases... But nobody's talking about the contract language. That's... Well... Doc, is the transfer restriction governed by contract interpretive law? Your brief is silent on that. I'm sorry, Judge Logan, I'm sorry. Is the interpretation of a stock transfer restriction in a bylaw or an article of incorporation governed by Arkansas rules of contract interpretation? No, but the court... Wait, wait, you said no? Plaintiffs say yes. I'm saying that the courts can construct these, and they can apply construction to it. That's what courts do as a matter of law, determine what the language means in the restriction. So the principles of contract interpretation apply, right? That's what plaintiff's argument is based on. Your brief was silent. Do you concede that? I'm saying that the courts... Do you concede that, yes or no? I don't understand. I want to talk to you about construction. I believe the courts have the right to set priorities. There's a huge jurisprudence of contract interpretation in every state in the country. There aren't very many cases like this. And this is not technically a contract, if you look at it. Right. It's a restriction in a bylaw that affects contractual transfers. When we construe that, do we apply principles of contract interpretation, which begin, of course, with the plain meaning controls? Well, court after court after court, including those that we cited here, finds that these restrictions that we're talking about are to prevent outsiders from coming in the corporation. Courts don't make findings when they construe contracts. Well... Interpretation of a contract is an issue of law. I agree with that. All right. So now how about the interpretation of a stock transfer restriction? Is that a question of law? Or are you saying, no, forget contract law. Just look at the grand purpose of corporate instruments. Well, it isn't always clear what the contract means. And you can't impose what the party's intended for it to mean. But, yes, that's right. That's part of contract interpretation jurisprudence. Right. But you won't answer question one. Is that the... We're a legal court. We don't make findings of fact. We apply principles of law. And you won't tell me what the principle of law is. Well, all I can say is the courts that we cited, and maybe they're wrong, but there are plenty of them, that if they can look at that and say the purpose is not fulfilled. The purpose is fulfilled of this contract. If one shareholder shares to another, it's not filled when you have an outsider... The purpose is for preventing outsiders to come into the corporation. Now, I would like to go to the sua sponte issues. There are three reasons why the court was entitled to rule sua sponte. And the first one is by offer of the appellant. On page 14 of its brief, it says that, citing the global petromarine case, when a losing party presents a motion for judgment on an issue, it has notice of the issue and opportunity to address it. The district court is permitted to enter summary judgment sua sponte in favor of the non-moving party when it denies the moving party's motion for summary judgment on that claim. That's a global petromarine case from the 8th Circuit in 2009. And the appellant goes on to say the district court entered summary judgments as to claims that were not the subject of any motion. And as Judge Smith has already pointed out, there were motions for summary judgment in Appendix 304 and 305. The plaintiff, appellant here, states, by this motion, the plaintiff seeks summary judgment as to plaintiff's claims for the enforcement of Okistra's bylaws and breach of contact, breach of fiduciary duty as to Jones, Loden, and Huddleston, and for a declaration that the Huddleston and Ballard are equitably barred. Was there anything to indicate they intended to have trial on remaining issues? Or would those issues resolve the entire dispute? Those issues, with regard to, yes, but what these issues are, these are the issues that the appellant says are not covered by the validity of the stock transfer. These are issues where they're exactly what they are. I guess what I'm asking is if plaintiffs had been granted summary judgment, would the case have been over? Or would there have been issues remaining for trial? The issues that would, we depend on the fact that the transfer was valid, but there are issues that they claim are apart from whether the transaction was valid, and those are the issues, breach of summary judgment, loans to Jones, the use of a company, breach of fiduciary duty, I'm sorry? You said breach of summary judgment, you meant fiduciary duty? Yes, I do mean, thank you, breach of fiduciary duty. Jones has benefitted from government programs where the land was actually enhanced. He paid back his loans already. Anyway, there are all these breach of fiduciary duty issues that because of the global marine case, they brought them up, it was denied, and the court was entitled to sui sponte, grant our summary, grant summary judgment for the appellant, for the appellee, excuse me. And granting summary judgment to you, did that resolve all of the issues in the case? Yes, yes. And one more time, what was the name of that case that you're citing? It's your case, Judge, Global Marine, this is it. It's in your brief, I take it. Page 14, no, not their brief, page 14. Okay. Yes, Global Marine, 577F3, 839, page 844, 8th Circuit, 2009. I don't know, yeah, I'm getting a warning here. Oh, the other is that these cases, these claims against Jones that are not covered by the valid transfer, according to them, should have been brought as shareholder derivative suits. They're damages to the corporation. They don't have standing, and because they don't have standing, we can raise it for the first time on appeal, and the court can rule as a matter of law that they did not have subject matter jurisdiction because of a lack of standing. Do the defendants have a position at this stage? What the remedy, what would happen if the two-share transfer is invalidated, remedy-wise? Well, their complaint seeks to have, oh, you said would they have a remedy? I asked if the defendants have a position. If the answer is not yet, that's perfectly legitimate, but if you argued it in the record, what have you argued? My time is up, I'm afraid. You can answer his question. Oh, thank you. Would you repeat the question, Judge? I'm sorry. Well, the plaintiff's, the brief suggests the plaintiff's position is it's one share to them and one share to us. There are two shares and six kids. Do the defendants have, and we don't just, if we invalidate a transfer rescission as the normal remedy, do defendants have a position as to what happens if the transfer is for any reason invalidated? If it violated the transfer restriction, let me put it that way, more specifically. Have the defendants taken a position, what happens? They have shifted their position from the- Not they, you. I think they have- Do the defendants have a position? Yet. Maybe no. No. Thank you, counsel. Thank you, Your Honor. Mr. Ludwick, your rebuttal. I'm sorry, do we have- I see, I'm sorry, Mr. Russell. He used it all, or did he only- All right. Proceed, Mr. Russell. Thank you. May it please the court, my name is Andrew Russell. I represent the separate appellees, Loden and Huddleston, in this case. And your Bain position is time barred, right? Because adding them to the case couldn't relate back. That's absolutely correct, Your Honor. And I don't really see that there's any argument either presented by Mr. Ludwick, the appellants in this case, that would overcome the time bar argument. So I won't go into that much further unless the court needs me to. The breach of fiduciary duty allegations that are brought by the appellants, I've categorized them into three different boxes for purposes of this discussion. The first one is that stock transfer and that there are allegations of breach of fiduciary duty surrounding the stock transfer and their acquiescence to that and their facilitation of that as members of the board. It is time barred. However, I think there's something else that needs to be discussed, and that is it's because of their acquiescence to the transfer and the allegations of breach of fiduciary duty that the appellants argue that they waived their rights to their proportional share of the two A shares that are at issue here. Our argument is two-fold of why that argument must fail. One, I don't believe they've waived any interest in those stocks if... You said plaintiffs waived? Plaintiffs argue your clients waived? The way you've stated it is confusing me. I'm sorry, Your Honor. I'll try to be more precise. The appellants are arguing, the plaintiffs, appellants... Your clients waived. That my clients waived their interest in those two A shares. And it's through that waiver that they feel as though they are then entitled to my clients' rights in the two A shares. First, my clients don't think they have a right in those two A shares. They feel as though the... I see my time is up. It's your thought. Thank you. That the transfer was correctly done, that their brother, Mr. Jones, is the rightful owner of those two A shares, and, therefore, they can't waive something that they don't think they have a right to. So, therefore, the waiver argument, I think, is a failing argument on the part of the appellants. Well, I assume they would also say if the transfer was rescinded for violation of the bylaw, that would abrogate any waiver. Absolutely, Your Honor. We'd be first in line. They're back in play. That would be our position, Your Honor. All right. Thank you, Mr. Lewis. Am I out of time, Your Honor? Yes. Thank you. Now, Mr. Ludwig, your rebuttal. The court asked about undue influence. The record reflects that Mr. Jones picked up the transfer paperwork from the lawyer that prepared it, and then none of the three defendants have any memory of how that transfer was signed by Mom. None of them. Jones had no memory, and neither did the other two board members of the corporation. I know the court's mindful of all the case law we cited on the derivative subject. I respectfully submit that in light of that case law, the facts in this case are very parallel to, say, Hall v. Stala. Mr. Jones has demonstrated repeatedly, even in the scant record that we have, that he's willing to move money from the corporate pocket to himself back and forth at will. And so a derivative action isn't going to help us. It's just not going to help us. I respectfully submit. And then, finally, I was glad to hear the last counsel note that our breach of fiduciary claims don't all go into one pot. And so I respectfully submit that Mr. Allen was wrong in suggesting that all breach of fiduciary duty claims that we made can be poured out under the heading of our motion for summary judgment on the restrictive transfer, because there's a lot of subsequent breach of fiduciary duty claims that we've made that post-date the transfer itself. Give me an example that doesn't have anything to do with the transfer. Okay. It would be self-dealing in the farm world to profit at the corporation's expense. We talked about false FSA documents that were filed subsequently driving a company vehicle listing it as 100% corporate use when he acknowledges he has no other vehicle and he drives to and from work down in the Gulf. Those sure sound like derivative claims. Except in the context of the Hall case, Your Honor, where the court says, you know, the absolute control acquired and continued by, in our case, or in that case, Stahl and Hatfield, cannot be ignored. The Dunhall board and its treasury cannot be separate from the will of its management. The board remains insensitive to its responsibilities to all shareholders. While shareholder equity has increased over the course of litigation, no dividends have been declared and no legitimate corporate reason for retaining profits was shown. That's an example. And then the court concludes that a derivative action isn't necessary that the plaintiffs in that case had a direct action and I suggest that the facts here are parable. Jones admits repaying money at the last minute on the eve of trial that he borrowed to gamble in the stock market and lost. If we filed a derivative action and he was required to pull more money out of his pocket and put it back in the till, that wouldn't help the plaintiffs because he's demonstrated a repeated pattern of pulling the money back out of the till and putting it back into his own pocket. All we'll burn is attorney fees. Thank you. Thank you, Mr. Ludwig. Thanks, all counsel, for your presence and the argument you've provided to the court in the briefing. We'll take the case under advisement rendered decision in due course. Thank you.